# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3976 | **DATE** | 10/28/2002 |
| **CASE TITLE** | Chicago District Council of Carp. vs. R.G. Construction Services, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies plaintiffs' motion for summary judgment. The case is set for status hearing on 11/5/02 at 9:30 a.m. for the purpose of setting a trial date.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 3 0 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 20 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR6 | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO DISTRICT COUNCIL OF CARPENTERS PENSION FUND, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 01 C 3976 ) |
| R.G. CONSTRUCTION SERVICES, INC., | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case, three Union-sponsored pension, health, and welfare funds, filed suit against R.G. Construction Services, Inc. ("RG") seeking payment of delinquent fringe benefit contributions owed by a subcontractor of RG, as well as liquidated damages, interest, and attorney fees. This action arises under section 502 of the Employee Retirement Income Security Act, 29 U.S.C. §1132, and section 310 of the Taft-Hartley Act, 29 U.S.C. §185. Plaintiffs have moved for summary judgment. For reasons stated below, the motion is denied.

### Facts

Plaintiffs, the Chicago District Council of Carpenters Pension Fund, the Chicago District Council of Carpenters Welfare Fund, and the Chicago and Northeast Illinois District Council of Carpenters Apprentice and Trainee Program ("Trust Funds"), receive contributions from employers pursuant to collective bargaining agreements between the employers and the Chicago and Northeast Illinois District Council of Carpenters ("Union"). These include agreements

negotiated with regional associations to whom employers have assigned their bargaining rights. Two such agreements are at issue in this case: an Area Agreement between the Union and the Mid-America Regional Bargaining Association, and a Joint Agreement between the GDCNI/CAWCC (neither party has spelled out the acronym for the Court) and the Union. Each agreement contains a clause – paragraph 3.4 of each agreement – providing that an employer that subcontracts work "shall assume the obligations of [the] subcontractor" for payment of union-scale wages and Trust Fund contributions unless the subcontractor is properly bonded. Each agreement requires the posting of a bond to ensure payment of wages and Trust Fund contributions, with the amount of the bond depending upon the number of persons employed by the employer.

RG is a commercial interior systems contractor. Interior systems work involves the installation of drywall and insulation. RG has a large staff, but it contracts a portion of its work to independent contractors. On April 12, 1999, RG entered into a master subcontract agreement with Grand Chicago Construction Services, Inc. ("GCCS"), which was incorporated in January 1999 and was involuntarily dissolved by the Illinois Secretary of State in June 2000. Under the agreement, GCCS agreed to perform labor at various job sites pursuant to work orders from RG, with materials supplied by RG. GCCS agreed to employ union labor and to be bound by the terms of any collective bargaining agreement to which RG was bound. This arrangement was in effect from April through July 1999, and during that period RG provided at least twelve work orders to GCCS. Pursuant to their contract, RG made lump sum payments to GCCS which, in turn, paid its employees. GCCS was required under an unidentified collective bargaining agreement to submit monthly reports to the Trust Funds listing the number of its employees, the number of hours worked by each employee, and the payments made to each employee. GCCS

did not submit reports for June or July of 1999, and it is unclear whether its reports for April and May were accurate. GCCS kept no contemporaneous records of how many hours were being worked by whom or at what site, and it paid its employees in cash.

In June 1999, the Union initiated a strike against GCCS for failure to make fringe benefit payments to the Trust Funds. On July 9, 1999, RG's Vice President John Garcea sent a letter to Rudy Morales of GCCS, informing him that GCCS was in default of its subcontracting agreement because it appeared that GCCS had abandoned work at five job sites. The Trust Funds subsequently initiated suit against GCCS to recover delinquent contributions. On November 23, 1999, an order of default was entered against GCCS requiring it to provide its books and records for an audit by the Trust Funds. Because GCCS had not kept payroll records, an auditor made an estimate of delinquent contributions based on affidavits from thirty-eight former GCCS employees. On January 26, 2002, default judgment was entered against GCCS in the amount of $83,345.05. The Trust Funds attempted to secure payment from GCCS to no avail. The Trust Funds then sought payment from RG, leading to the present lawsuit.

## Discussion

To obtain summary judgment, a party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When analyzing the evidence, "all reasonable inferences must be viewed in favor of the nonmoving party." *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989).

The Trust Funds contend that the Area and Joint Agreements subject RG to liability for

the obligations of any of its subcontractors that were improperly bonded and failed to make the appropriate fringe benefit payments to the Trust Funds. They argue that GCCS was improperly bonded and failed to make contributions for 8,919 employee hours. According to the Trust Funds, RG is liable for $62,561.47 in delinquent contributions, $12,512.29 in liquidated damages, and $16,459.85 in interest, for a total of $91,533.61.

1.   **The Agreements**

RG argues that the Trust Funds' evidence is insufficient to establish as a matter of law that RG is bound to either the Area Agreement or the Joint Agreement. To show that RG is subject to the Area Agreement, the Trust Funds present a "short-form agreement" which states that "R.G. Interiors Inc." of 3400 Martens Street entered into an agreement on January 29, 1980 with Chicago District Council of Carpenters, Cook, DuPage, and Lake Counties, Illinois under which R.G. Interiors, Inc., recognizes the Union as its sole and exclusive bargaining agent. The form states that it is in effect from June 1, 1979 through May 31, 1981 and is renewed thereafter unless notice of termination or amendment is given. This document does not establish as a matter of law that RG is a party to the Area Agreement. Though RG's corporate name, "R.G. Construction Services, Inc.," is similar to "R.G. Interiors, Inc.," the two names are not identical, and plaintiffs have failed to show that the two companies are one and the same.

To show that RG is bound to the Joint Agreement, the Trust Funds present a spreadsheet listing twenty-five companies and their contact information. Line sixteen contains the RG's correct name, and an address and telephone number, and it lists a "Robert Garcea, Jr." as the company's contact. The notation "[r]eceived from Joe Feldner 5/26/98 as current list of members that have assigned their bargaining rights to GDCNI/CAWCC" is handwritten across the bottom of the page. A name follows the written statement, but it is indecipherable. This

document fails to establish as a matter of law that RG is bound to the Joint Agreement. Among other things, it is unauthenticated, and the Trust Funds have provided no explanation of its import.

Plaintiffs also present an affidavit from Jeffrey Isaacson, the First Vice-President of Chicago and Northeast Illinois District Council of Carpenters. Isaacson states in conclusory fashion that RG is bound to both Agreements, but he provides no foundation or explanation for that conclusion. Under the circumstances, the affidavit does not establish that RG is subject to either agreement.

Finally, plaintiffs offer a settlement agreement dated September 19, 2000 between R.G. Construction Services, Inc. and the Chicago District Council of Carpenters Pension Fund, Chicago District Council of Carpenters Health and Welfare Fund, and the Chicago and Northeast Illinois District Council of Carpenters. This agreement concerns a similar case involving an improperly bonded subcontractor that was delinquent in making contributions to the Trust Funds. This agreement states that RG is "signatory to a Collective Bargaining Agreement ("CBA") with the Chicago and Northeast Illinois District Council of Carpenters," and it states that Article 3.4 of that agreement "requires R.G. Construction to assume the obligations of any subcontractor which is improperly bonded as required by the terms of the CBA." But the settlement agreement does not specify the applicable bonding requirements, and the Trust Funds have made no effort to establish that the collective bargaining agreement referenced in the settlement agreement is the same as either of the agreements upon which they rely in this case.

The settlement agreement, the authenticity of which RG does not dispute, is sufficient to establish that RG is bound to some collective bargaining agreement with the District Council that renders RG liable for the unpaid contributions of an improperly bonded subcontractor. But the

Trust Funds have failed to provide evidence that establishes the terms of the collective bargaining agreement referenced in the settlement agreement. Thus the issue can only be determined after a trial.

## 2. Sufficiency of bond

Assuming the Trust Funds can ultimately establish by a preponderance of the evidence that RG is bound to the Area Agreement and/or the Joint Agreement, RG's liability for GCCS's unpaid contributions depends upon proof that GCCS was not properly bonded. Under both agreements, the amount of the bond required for a subcontractor depends upon the number of employees working for the subcontractor. Because the Trust Funds have failed to establish for present purposes that RG is subject to either agreement, the issue of whether GCCS was improperly bonded is also genuinely disputed.

However, even if it were determined that RG was bound to the agreements, summary judgment would still be inappropriate on the issue of the insufficiency of GCCS's bond. It is undisputed that GCCS maintained a bond of $15,000, which under the agreements would be sufficient if GCCS had between six and ten employees. Though the Trust Funds argue that GCCS had more than ten employees, the evidence in this regard is genuinely disputed, at least in some respects.

The Trust Funds rely primarily on the previously-mentioned auditor's report, which was based primarily on affidavits from former GCCS employees regarding the hours they worked. The auditor concluded that GCCS had sixteen employees in April 1999; twenty-nine in May; thirty-three in June; and seven in July. (If accepted, this evidence would establish RG's liability for April, May, and June, but not for July.) The auditor, in trying to determine the number of persons employed by GCCS, was working under difficult conditions due to the lack of payroll

records. His conclusions may ultimately carry the day, but they are subject to significant dispute. Specifically, they conflict with the contemporaneous reports GCCS made regarding how many employees it had in April and May 1999. More importantly, to rebut the auditor's reliance on affidavits from GCCS employees regarding the number of hours they worked, RG has submitted an affidavit from John Garcea, one of its officers, who states that based on his experience in the industry the employees' estimates grossly exceed the number of hours it ought to have taken to do the work. Though Garcea's affidavit is contradicted by an affidavit from Rudy Morales, a GCCS job superintendent, the accuracy of the auditor's findings is genuinely disputed and can only be determined through a trial.

## Conclusion

For the reasons stated above, the Court denies plaintiffs' motion for summary judgment. The case is set for a status hearing on November 5, 2002 at 9:30 a.m. for the purpose of setting a trial date.

MATTHEW F. KENNELLY
United States District Judge

Date: October 28, 2002